IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IMAN MUHAMMAD, | ) | 4:15CV3136 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| SCOTT BUSBOOM, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Iman Muhammad, formerly known as Daryle M. Duncan, alleges that while incarcerated at the Tecumseh State Correctional Institution, he was sexually harassed and assaulted by two female staff members for a period of two years, as a result of which he requires mental health counseling and medication. Plaintiff claims an associate warden, Defendant, Scott Busboom, was aware the two staff members had engaged in inappropriate contact with other inmates but had not intervened. Liberally construed, Muhammad's second amended complaint states a claim for relief arising under the Eighth Amendment, but Busboom has moved for summary judgment on the basis of qualified immunity. Muhammad has not responded to Busboom's motion, which will be granted.

Also pending before the court are (1) a motion to compel discovery that Muhammad filed about one week before Busboom filed the motion for summary judgment[1] and (2) a motion to suspend progression order deadlines that Busboom filed after the summary judgment motion. Muhammad's motion to compel will be denied for failure to comply with the court's local rules. *See* NECivR 7.1(i) ("[T]his court only considers a discovery motion in which the moving party, in the written motion, shows that after personal consultation with opposing parties and sincere attempts to

---

[1] Plaintiff has not made a showing that he is unable to respond to Defendant's motion for summary judgment without discovery. *See* Fed. R. Civ. P. 56(d).

resolve differences, the parties cannot reach an accord.").[2] Busboom's motion to suspend progression order deadlines is rendered moot by the granting of his motion for summary judgment, and therefore will be denied without prejudice.

## I. STATEMENT OF MATERIAL FACTS

In accordance with the court's local rules, Busboom's brief includes "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). Because Muhammad has not responded to the motion for summary judgment, Busboom's statement of material facts is considered admitted. *See* NECivR 56.1(b)(1). Thus, the following facts, which are properly referenced to filed exhibits, are accepted as true:

1. Busboom was employed as an Associate Warden with the Nebraska Department of Correctional Services (NDCS) assigned to the Tecumseh State Correctional Institution (TSCI) from April 9, 2012 to May 29, 2016. (Ex. 1 [Filing No. 32-1], ¶ 4)

2. Busboom has been the TSCI Deputy Warden since May 30, 2016. (Ex. 1, ¶ 5)

3. On July 16, 2015, NDCS Corporal Marsha Hume (Hume) was assigned to the Skilled Nursing Facility at the Tecumseh State Correctional Institution (TSCI). On that date, Hume was observed by a NDCS Nurse exchanging a kiss with Muhammad. (Ex. 2 [Filing No. 32-2], ¶ 5)

4. On July 17, 2015, NDCS Captain Christopher Connelly (Connelly) spoke with Muhammad. Muhammad said Hume had performed oral sex on him on different occasions in different

---

[2] Although Muhammed appears pro se, he is "bound by and must comply with all local and federal procedural rules." NEGenR 1.3(g).

locations in the TSCI Secured Nursing Facility. Muhammad said those locations included the shower area, kitchen area, the bathrooms in the hallway, and the cell in the back of the facility. Muhammad further reported that current and former female employees of Correct Care Solutions, a third party contractor with NDCS, had performed oral sex on him in those areas. (Ex. 2, ¶¶ 4, 6)

5. On July 22, 2015, the Nebraska State Patrol was requested to investigate Hume for having a sexual relationship with an inmate at TSCI. (Ex. 3 [Filing No. 32-3], ¶ 7)

6. On July 24, 2015, Nebraska State Patrol Investigator Eugene True (True) interviewed Muhammad as part of the investigation. Muhammad admitted he had sexual penetration, oral, vaginal, and anal sex, while working as a porter in the TSCI Skilled Nursing Unit with three different females, including Hume and Nurse Tami Helmick (Helmick). Muhammad stated he knew the women were loose in that unit and that if he was nice perhaps they would let him "play" meaning sex. Muhammad stated "I knowingly engage in these activities," and that these sexual encounters had occurred over a period of approximately two years. Specifically, Muhammad said his sexual relationship with Hume began a little over a year ago and he'd had sex with her on four occasions. Muhammad further said he had sex with Helmick on two separate occasions in the last two years. Muhammad said these sexual encounters all occurred in the TSCI medical unit, either in the restroom or in the hallway by the restroom. Muhammad explained the sexual encounters would take place while he was standing in the restroom with the door open, or in the hallway near the restroom. Muhammad explained he was able to see the monitor on the desk while having sex in these locations, so if anyone was coming he or his partner had time to separate. Muhammad said when someone was coming, either he or his partner would go into the bathroom while the other stayed out in the hallway. Muhammad stated he was never caught having sex with any of the females. (Ex. 3, ¶¶ 3, 4, 8)

3

7. Muhammad told True he wished to marry Hume. (Ex. 3, ¶ 9)

8. An Inmate Interview Request (IIR) is a written document submitted by an inmate to a member or members of the administration of the facility where the inmate is incarcerated. Inmates may communicate with facility administration members through the submission of an IIR. IIRs are usually signed by the inmate in order to indicate to the facility administration member who submitted the IIR. (Ex. 4 [Filing No. 32-4], ¶ 7; Ex. 5 [Filing No. 32-5], ¶ 7)

9. Sometimes inmates submit anonymous IIRs to members of the TSCI administration. When a member of the TSCI administration receives an anonymous IIR from an inmate, the TSCI administration member keeps the IIRs in an anonymous IIR file for 5 years. (Ex. 4, ¶ 8; Ex. 5, ¶ 8)

10. TSCI Secretary to the Associate Warden Rebecca Edwards (Edwards) is the keeper of the anonymous IIRs that have been submitted to the TSCI Associate Warden. (Ex. 5, ¶¶ 5, 9)

11. Edwards searched the entire anonymous IIRs file for the TSCI Associate Warden in an attempt to locate an IIR that would have made Busboom aware of inappropriate contact between an inmate and Hume or Helmick. Edwards did not find any IIRs that mentioned Muhammad, Hume, or Helmick. (Ex. 5, ¶ 10)

12. TSCI Secretary to the Deputy Warden Jennifer Jepsen (Jepsen) is the keeper of the anonymous IIRs that have been submitted to the TSCI Deputy Warden. (Ex. 4, ¶ 9)

13. Jepsen searched the entire anonymous IIRs file for the TSCI Deputy Warden in an attempt to locate an IIR that would have made Busboom aware of inappropriate contact between an inmate and Hume or Helmick. Jepsen did not find any IIRs that were addressed to Busboom; or mentioned Muhammad or Helmick. (Ex. 4, ¶ 10)

14. Jepsen found one anonymous IIR in the anonymous IIR file for the TSCI Deputy Warden that mentioned Hume. The IIR was submitted and signed by inmate "Bill Hader 77173" on March 17, 2015. Included in the file with the IIR was an email string in which NDCS determined there was no inmate with that name, and that the inmate number provided on the IIR was for an inmate who had been discharged. The IIR was not addressed to Busboom. The IIR was addressed to "Miss Capps or the Warden." Capps was the previous TSCI Deputy Warden. The IIR did not report that Hume was engaged in the sexual harassment or assault of any inmate. The IIR did not mention Muhammad. (Ex. 4, ¶ 11, Ex. "A")

15. Muhammad admits all phone calls from TSCI to phone number 402-480-1072 were between himself and Hume. (Ex. 6 [Filing No. 32-6], p. 4)

16. Muhammad admits he voluntarily attempted to marry Hume by filing an Inmate Marriage Intention form on October 25, 2015. (Ex. 6, p. 4)

17. Muhammad admits he voluntarily requested Hume be put on his visitor detail at TSCI on two separate occasions in October 2015. (Ex. 6, p. 4)

18. Muhammad admits he voluntarily requested Hume be put on his visitor detail at the Nebraska State Penitentiary on two separate occasions in October 2015. (Ex. 6, p. 4)

19. Muhammad admits he voluntarily had contact with Hume via email after she was terminated from employment at TSCI. (Ex. 6, p. 5)

20. Muhammad admits he was in a voluntary romantic relationship with Helmick and/or Hume during part or all of their employment at TSCI. (Ex. 6, p. 4)

5

21. Busboom never received an unsigned IIR regarding inappropriate contact between Hume and/or Helmick and any inmate. (Ex. 1, ¶ 6)

22. Busboom never received an undated and unsigned IIR addressed to him that stated "Nurse Tami Helmick is having sex with inmates you need to put a stop to it." (Ex. 1, ¶ 7)

23. Busboom never worked as a nurse or as medical personnel at TSCI. (Ex. 1, ¶ 8)

24. Busboom was never made aware that Hume or Helmick engaged in unwelcome or involuntary sexual interactions with Muhammad. (Ex. 1, ¶ 9)

(Filing No. 31 at CM/ECF pp. 1-5),

## II. STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion" Fed. R. Civ. P. 56(a).

In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *See Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).

6

The moving party bears the burden of showing there are no genuine issues of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

### III. DISCUSSION

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45 (2012) (internal quotes and citations omitted).

"Determining the question of qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Santiago v. Blair*, 707 F.3d 984, 989 (8th Cir. 2013). Courts may address either prong of the analysis first, *Pearson v. Callahan,* 555 U.S. 223, 236 (2009), and "the defendants are entitled to qualified

7

immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

An Eighth Amendment claim for failure to protect is comprised of two elements. First, an "inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the inmate must establish that the defendant prison official recklessly disregarded that risk. *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). In other words, the prison official must be deliberately indifferent to an inmate's safety. *Farmer*, 511 U.S. at 834.

"[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (internal quotation and citations omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind. *Id.* "[W]elcome and voluntary sexual interactions, no matter how inappropriate, cannot as matter of law constitute 'pain' as contemplated by the Eighth Amendment. *Id.* at 1339 (holding that prisoner who entered into consensual relationship with guard had not established the existence of the objective component of a cause of action under the Eighth Amendment).

Muhammad has not produced any evidence to show he was ever sexually harassed or sexually assaulted by two NDCS female staff members or to show that Busboom knew Hume and Helmick engaged in inappropriate contact with inmates. In fact, the undisputed evidence clearly establishes Muhammad voluntarily welcomed sexual relations with Hume and Helmick and refutes his claims that Busboom was deliberately indifferent to the situation. Because there is no genuine issue of material

fact that would demonstrate the deprivation of a constitutional right, Busboom is entitled to qualified immunity as a matter of law.

Accordingly,

IT IS ORDERED that:

1. Plaintiff's motion to compel (Filing No. 29) is denied.

2. Defendant's motion for summary judgment (Filing No. 30) is granted, and Plaintiff's action is dismissed with prejudice.

3. Defendant's motion to suspend progression order deadlines (Filing No. 34) is denied without prejudice, as moot.

4. Judgment of dismissal will be entered by separate document.

DATED this 23rd day of January, 2017.

                                        BY THE COURT:

                                        s/ *Richard G. Kopf*
                                        Senior United States District Judge